IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| JERRY HARTFIELD § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | |
| § | CIVIL ACTION NO. G-06-275 |
| OFFSHORE OIL SERVICES, INC., FLUID § | |
| CRANE CONSTRUCTION, INC., and § | |
| FAIRWAYS OFFSHORE EXPLORATION, § | |
| INC., § | |
| § | |
| Defendants. § | |

**ORDER DENYING DEFENDANT FLUID CRANE CONSTRUCTION, INC.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND MOTION TO TRANSFER VENUE**

Plaintiff Jerry Hartfield ("Plaintiff") brings this action against Defendants Offshore Oil Services ("Offshore Oil"), Fluid Crane Construction, Inc. ("Fluid Crane"), and Fairways Offshore Exploration, Inc. ("Fairways") for personal injuries allegedly occurring on or about May, 10, 2005 aboard the M/V HAYDEN, a vessel owned by Defendant Offshore Oil. Now before the Court is Defendant Fluid Crane's Motion to Dismiss or, in the Alternative, Motion to Transfer Venue. For the reasons stated below, the Motion to Dismiss or Transfer is **DENIED**.[1]

**I.    Background**

Plaintiff's employer assigned Plaintiff to work on High Island Block 325-A, a platform located in the Gulf of Mexico, 120 miles off the coast of Texas. Plaintiff sustained injuries when he

---

[1] The Court does not consider this Order worthy of publication. Accordingly, it has not requested and does not authorize publication.

attempted to unhook a load from a crane on said platform. At the time of the alleged accident, Plaintiff was aboard the M/V HAYDEN.

Defendant Fluid Crane, the Movant, is the owner and operator of the crane allegedly involved in the accident. Fluid Crane is a Louisiana Corporation with its principal office in New Iberia, Louisiana. Defendant Offshore Oil is a Texas corporation and the owner of the M/V HAYDEN. Defendant Fairways is a Texas corporation, and Plaintiff alleges that Fairways either owns or operates the vessel or the platform and its equipment. Neither Offshore Oil nor Fairways addressed the Court regarding Fluid Crane's motions.

## II.     Motion to Dismiss for Lack of Personal Jurisdiction

*A. Legal Standard*

Fluid Crane seeks to dismiss Plaintiff's claims against it for lack of personal jurisdiction pursuant to FED. R. CIV. P. 12(b)(2). Fluid Crane, a nonresident defendant, is subject to personal jurisdiction in this District if: (1) it is amenable to service of process under Texas's long-arm statute, and (2) the exercise of personal jurisdiction over Fluid Crane is consistent with due process. *See Stripling v. Jordan Prod. Co., L.L.C.*, 234 F.3d 863, 869 (5th Cir. 2000); *Jones v. Petty-Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1067 (5th Cir. 1992). The Texas long-arm statute grants jurisdiction over a nonresident defendant "doing business" in Texas. *See* TEX. CIV. PRAC. & REM. CODE § 17.042 (Vernon 1997). The phrase "doing business" has been interpreted to reach as far as the United States Constitution permits, and therefore the jurisdictional inquiry under the Texas long-arm statute collapses into a single due process inquiry. *See Ruston Gas Turbines, Inc. v. Donaldson* Co., 9 F.3d 415, 418 (5th Cir. 1993); *Williams v. Castro*, 21 F. Supp. 2d 691, 692 (S.D. Tex. 1998); *Schlobohm v. Schapiro,* 784 S.W.2d 355, 356–57 (Tex. 1990).

Whether the exercise of personal jurisdiction over Fluid Crane is consistent with the Due Process Clause of the United States Constitution likewise requires a two-pronged inquiry. First, the Court must conclude that Fluid Crane has "minimum contacts" with the forum state. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L. Ed. 95 (1945). Second, the Court must determine that requiring Fluid Crane to litigate in this forum does not offend "traditional notions of fair play and substantial justice." *Id.*; *see also Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994); *Ruston Gas Turbines*, 9 F.3d at 418.

The "minimum contacts" prong can be satisfied by finding either general or specific jurisdiction over a defendant. *See Wilson*, 20 F.3d at 647. A defendant's contacts unrelated to the cause of action may confer general jurisdiction, but these contacts must be both "continuous and systematic" and "substantial." *Id.* at 647, 650–51. A defendant's limited contact with the forum state may support specific jurisdiction if such contacts give rise to the cause of action. *See Ruston Gas Turbines*, 9 F.3d at 419 ("A single act by the defendant directed at the forum state, therefore, can be enough to confer personal jurisdiction if that act gives rise to the claim being asserted."). Specific jurisdiction is proper if the nonresident defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefit and protection of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S. Ct. 2174, 2183, 85 L. Ed. 2d 528 (1985) (citing *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228, 1239–40, 2 L. Ed. 2d 1283 (1958)). A defendant establishes minimum contacts by purposely engaging in conduct directed toward the forum state "such that [the defendant] should reasonably anticipate being haled into court there." *Id.* at 474, 105 S. Ct. at 2183 (citing *World-Wide Volkswagen Corp. v. Woodson*, 44 U.S. 286, 297, 100 S. Ct. 559, 567, 62 L. Ed. 490 (1980)).

Generally, the plaintiff bears the burden of establishing the Court's jurisdiction over a nonresident defendant. *See Wilson*, 20 F.3d at 648. However, it is sufficient for the plaintiff to make a prima facie showing of jurisdiction, and any conflicts between affidavits are resolved in favor of the plaintiff. *See Asarco, Inc. v. Glenara, Ltd.*, 912 F.2d 784, 785 (5th Cir. 1990); *Guyton v. Pronav Ship Mgmt., Inc.*, 139 F. Supp. 2d 815, 818 (S.D. Tex. 2001).

*B. Analysis*

Fluid Crane contends that the Court lacks both specific and general jurisdiction and that it has had only "sparse" contacts with Texas. Plaintiff neither admits nor denies that Fluid Crane's contacts with Texas are sparse; instead, Plaintiff argues that the Court has specific jurisdiction over Fluid Crane because the cause of action arose out of Fluid Crane's contacts with Texas. The Court agrees with Plaintiff.

Plaintiff alleges that he traveled to the platform twice, both times departing from Galveston, Texas, and that between trips he and other workers were paid to "standby" in Galveston for approximately twenty-four hours. He also alleges that employees of Fluid Crane accompanied him on the vessel to and from Galveston, Texas. Fluid Crane has not denied these allegations.

*1. Fluid Crane's Contacts.* Plaintiff asserts that the cause of action arose due to an accident that occurred on the Outer Continental Shelf off of the coast of Texas, on or near High Island Block 325-A. Because Texas is the state adjacent to the platform, Plaintiff claims that the alleged tort occurred "in" Texas. Conversely, Fluid Crane argues that, because the platform is not within three leagues of the Texas coast, the tort cannot be deemed to have occurred in Texas.[2]

---

[2] According to the Submerged Lands Act of 1953, the seaward boundary of a state abutting the Gulf of Mexico is defined as being "as [it] existed at the time such state became a member of the Union" except the boundary cannot extend "more than three marine leagues into

4

In *Mote v. Oryx Energy Co.*, the Eastern District of Texas held that "[a]rtificial islands may be considered within the boundaries of the adjacent state for purposes of determining where an accident 'occurred' for long-arm jurisdiction purposes." 642 F. Supp. 639, 642 (E.D. Tex. 1995) (citing *Hughes v. Lister Diesels, Inc.*, 642 F. Supp. 233 (E.D. La. 1986)). The *Mote* court, drawing on the analysis in *Hughes v. Lister Diesels, Inc.*, reasoned that such a construction is necessary because otherwise individuals who "travel from all over the United States to work in the Gulf of Mexico" would not be within the reach of long-arm statutes, thus nullifying the provisions of the Outer Continental Shelf Lands Act (OCSLA) that provide for the incorporation of adjacent state law. *See id.* ("To hold that these persons have not committed a tort within the state when there is no other statutory provisions to govern long-arm jurisdiction would be anomalous."); *Hughes v. Lister Diesels, Inc.*, 642 F. Supp. at 236–37 ("Unless this construction is made, the provisions of OCSLA which provide for the incorporation of the applicable state law would be rendered meaningless . . ."); *see also* Outer Continental Shelf Lands Act, 43 U.S.C. § 1333(a)(2)(A) (providing that courts should apply the law of the adjacent state as surrogate federal law to the extent that it is not inconsistent with federal laws and regulations). Additionally, as Judge Rubin concluded in *Taylor v. Fishing Tools, Inc.*, injecting a state's geographic boundary into litigation involving accidents on such platforms "would frustrate the very uniformity sought to be achieved by the [OCSLA]." *Taylor v. Fishing Tools, Inc.*, 274 F. Supp. 666, 671 (E.D. La. 1967). Accordingly, Judge Rubin noted that "[b]y its terms the

---

the Gulf of Mexico," unless the United States Supreme Court has decreed otherwise. 43 U.S.C. § 1301(b) (2000). While the history of Texas's seaward boundary is too complicated to simply declare that it was three leagues when Texas was admitted to the Union, *see United States v. Louisiana, Texas, Mississippi, & Florida*, 363 U.S. 1, 36–65, 80 S. Ct. 961, 982–97, 4 L. Ed. 2d 1025 (1960), the Supreme Court of the United States held that "Texas is entitled to a grant of three leagues from her coast under the Submerged Lands Act," *id.* at 65, 80 S. Ct. at 997.

[OCSLA] is intended to make [the adjacent state's] law applicable to the artificial islands in the Gulf of Mexico, *just as if they were located in* [*the adjacent state*]." *Id.* (emphasis added).

Fluid Crane suggests that the Plaintiff's reliance on *Mote* is misplaced, arguing that *Mote* can be clearly distinguished from the case at hand because the injury in *Mote* occurred on a shelf that was only three miles off the Texas coast, so therefore clearly within the boundaries of Texas according to the Submerged Lands Act. *See Mote*, 893 F. Supp. at 642–43.  While Fluid Crane is correct in this regard, the reasoning used by the court in *Mote* is still applicable. Additionally, the *Mote* court's arguments originated in *Lister Diesels*, and the *Lister Diesels* accident occurred twenty-one miles from shore—clearly outside the boundaries of Texas as defined in the Submerged Lands Act.

Fluid Crane urges the Court to consider the reasoning applied in *Youman v. Newfield Exploration Co.*, 977 F. Supp. 809 (E.D. Tex. 1997). In *Youman*, the Eastern District of Texas found that the operations of a company that operated and leased platforms off the coast of Texas, beyond three leagues, did "not take place within the State of Texas." *Youman*, 977 F. Supp. at 811–12.  Like the case at hand, the plaintiff in *Youman* sought to establish that a Texas district court had personal jurisdiction over a Louisiana company; and, like the case at hand, the plaintiff was injured while working on the Outer Continental Shelf outside a state's territorial boundaries. However, unlike the case at hand, the plaintiff in the *Youman* case was injured in the coastal waters off of the coast of *Louisiana*.  The *Youman* plaintiff tried to establish that the defendant's operations on platforms off the coast of Texas constituted the necessary minimum contacts to establish that the defendant was "doing business" in Texas—not that the cause of action arose from the defendant's contacts. Thus, the legal questions involved in *Youman* and the case at hand are quite different.

6

The Court agrees with the reasoning used by both the *Mote* and *Lister Diesel* courts and holds that the alleged tort in this case occurred *in* Texas for specific jurisdiction purposes. Accordingly, Fluid Crane has the minimum contacts required to establish personal jurisdiction.

*2. Traditional Notions of Fair Play and Substantial Justice.* The second prong of the personal jurisdiction inquiry requires the plaintiff to show that haling the defendant into court in Texas does not violate "traditional notions of fair play and substantial justice." *International Shoe*, 326 U.S. at 316, 66 S. Ct. at 158 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S. Ct. 339, 343, 85 L. Ed. 275 (1940)). The Court must consider the following factors when evaluating the fairness prong:

> [T]he burden upon the nonresident defendant; (2) the interests of the forum state; (3) the plaintiff's interest in securing relief; (4) "the interstate judicial system's interest in obtaining the most efficient resolution of controversies;" and (5) "the shared interest of the several States in furthering fundamental substantive social policies."

*Belin*, 20 F.3d at 647 n.3 (quoting *Bullion v. Gillespi*, 895 F.2d 213, 216 (5th Cir. 1990).

Fluid Crane claims that the fairness prong of the personal jurisdiction test is not satisfied because (1) its contacts with Texas are limited to offshore work in federal waters; (2) it did not purposely direct its actions towards Texas; and (3) it does not market itself in Texas. Plaintiff claims that the forum is fair to Fluid Crane given that (1) the cause of action arises on the Outer Continental Shelf, off of the coast of Texas; and (2) Fluid Crane employees departed from Galveston, Texas to reach their destination in the federal waters off of the coast of Texas. While Fluid Crane makes no specific allegations regarding its employees' departure point, it does claim that its contact with Texas is extremely limited. Because the Court must resolve any discrepancies between Plaintiff's and Fluid Crane's allegations in favor of Plaintiff, *see Asarco*, 912 F.2d at 785, the Court considers Plaintiff's

allegations regarding Fluid Crane's employees' departure point as true.

First, the Court considers the burden traveling to Galveston would have on Fluid Crane. If Fluid Crane's employees stayed in Galveston while awaiting their trips to Texas offshore platforms, then it is not too burdensome for Fluid Crane to come to Galveston for trial. Next, the Court looks to the interest of the forum. The citizens of Galveston would surely be interested in seeing a just resolution to disputes regarding alleged injuries to individuals who departed the shores of their community to perform work on platforms off of the Texas coast. Third, the Court considers Plaintiff's interest in securing relief. Plaintiff should be able to maintain a cause of action against Fluid Crane in Louisiana if this Court were to dismiss for lack of personal jurisdiction, so this element is inconsequential. Finally, as to judicial efficiency and policy considerations, the Court notes that it is more efficient to have one trial in Galveston, Texas than two trials–one in Galveston and one in Louisiana. Because each of these elements either weighs in favor of exercising personal jurisdiction or is neutral, the Court finds that exercising personal jurisdiction over Fluid Crane does not offend traditional notions of fair play and substantial justice.

Therefore, after careful consideration of the totality of the circumstances, the Court concludes that personal jurisdiction exists over Fluid Crane in this action and that the exercise of such jurisdiction is consistent with Constitutional requirements. Accordingly, Fluid Crane's Motion to Dismiss for Lack of Personal Jurisdiction is hereby **DENIED.**

### III.   Motion to Transfer Venue to the Western District of Louisiana

*A. Legal Standard*

Turning now to Fluid Crane's alternative Motion to Transfer Venue, 28 U.S.C. § 1404(a)

provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Under this statute, the party seeking the transfer bears the burden of demonstrating that the Court should, in its sound discretion, transfer the action. *See Peteet v. Dow Chemical Co.*, 868 F.2d 1428, 1436 (5th Cir. 1989) (noting that the decision to transfer a case rests exclusively within the sound discretion of the district court); *Time, Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir. 1966) (highlighting that the movant bears the burden of demonstrating that the action should be transferred).

When considering whether a transfer is warranted, the Court considers the following factors: the availability and convenience of witnesses and parties; the location of books and records; the cost of obtaining attendance of witnesses and other trial expenses; the place of the alleged wrong; the possibility of delay and prejudice if transfer is granted; and the plaintiff's choice of forum, which is entitled to great deference. *See, e.g.*, *Henderson v. AT&T Corp.*, 918 F. Supp. 1059, 1065 (S.D. Tex. 1996); *Dupre v. Spanier Marine Corp.*, 810 F. Supp. 823, 825 (S.D. Tex. 1993); *Continental Airlines, Inc. v. American Airlines, Inc.*, 805 F. Supp. 1392, 1395–96 (S.D. Tex. 1992). The decision to transfer a case lies within the sound discretion of the Court, and such determinations are reviewed under an abuse of discretion standard. *See Peteet*, 868 F.2d at 1436.

B. Analysis

1. *Availability and Convenience of Witnesses and Parties.* "The availability and convenience of witnesses is arguably the most important of the factors" in the § 1404 analysis. *LeBouef v. Gulf Operators, Inc.*, 20 F. Supp. 2d 1057, 1060 (S.D. Tex. 1998) (citing 15 Charles A. Wright, Arthur R.

9

Miller & Edward H. Cooper, *Federal Practice & Procedure* § 3851, at 415 (1986)).  To support a Motion to Transfer on this ground, the movant must identify key witnesses and provide a brief outline of their likely testimony.  *See id.* (citing *Dupre*, 810 F. Supp. at 825).  "The convenience of one key witness may outweigh the convenience of numerous less important witnesses." *Id.*

Fluid Crane has briefly outlined the anticipated testimony of four witnesses, two of whom are currently employed by Fluid Crane.  Since defendants can compel the attendance at trial of their own employees, the availability and convenience of these potential witnesses is given less weight.  *See Lajaunie v. L & M Bo-Truc Rental, Inc.*, 261 F. Supp. 2d 751, 754 (S.D. Tex. 2003).  Two of the witnesses, however, are no longer employed by Fluid Crane.  One of these witnesses, Robert Graham, was the crane operator on May 10, 2005, when the accident allegedly occurred.  He is one of only two Fluid Crane employees that were on location that day.  The other witness who is no longer employed by Fluid Crane, Mitch Leto, was also a crane operator for Fluid Crane, but he was not operating the crane on the date in question.  Rather, he operated the crane from April 22, 2005 to May 8, 2005. Fluid Crane anticipates that Leto will be able to testify about Plaintiff's condition and work performance in the days preceding the alleged accident. Graham resides in Abbeville, Louisiana, and Leto is believed to be incarcerated in Dequincy, Louisiana.  Both of these witnesses are potentially key witnesses, and Fluid Crane's need of their testimony weighs in its favor regarding its request to transfer venue to Louisiana.

However, Fluid Crane has two witnesses that it claims are key that are still in its employ: William Baudoin, a crane operator who worked from April 19, 2005 to April 24, 2005, and Jacob Paul Vincent, the other Fluid Crane employee working at the alleged accident location on the date the cause of action arose.  The Court reiterates that the convenience of key witnesses who are employees

of the defendant requesting transfer is "entitled to less weight because that party will be able to compel their testimony at trial." *Continental Airlines*, 805 F. Supp. at 1397; *see Dupre*, 810 F. Supp. at 825. The testimony of these two witnesses will probably parallel that of Graham and Leto to some extent, and the Court "vigorously exercises its authority under Fed. R. Evid. 403 and 611(a) to ensure that each witness' testimony is as concise as possible and that cumulative and redundant testimony is kept to a minimum." *Continental Airlines*, 805 F. Supp. at 1397; *Dupre*, 810 F. Supp. at 827. Therefore, even though Graham and Leto may not be compelled to testify because they are Louisiana residents beyond the subpoena power of this Court, the Court is not convinced that the need for their testimony is substantial enough to merit transferring the case to Louisiana.

Additionally, as noted above, Offshore Oil and Fairways are both Texas corporations. Despite the lack of briefing from these two defendants, it is highly conceivable that there are also key witnesses from Texas. In fact, Plaintiff claims that he is certain that at least one of the members of the M/V HAYDEN's crew, with whom the Plaintiff spoke, was from the Galveston area. With the limited information regarding witness testimony that the Court has received and given the fact that the Court liberally construes Fed. R. Civ. P. 32 to allow depositions wherever convenient, the Court finds that the availability and convenience of key witnesses factor does not weigh heavily in favor of transfer. Next, the Court turns its inquiry to the availability and convenience of the parties.

Plaintiff, though a resident of Louisiana, chose to file this action in Texas. Therefore, Texas must be a convenient forum for the Plaintiff. Fluid Crane, being a Louisiana Corporation, may, on the other hand, experience some inconvenience if the trial is held in Texas. However, according to Plaintiff, Fluid Crane has sent at least some of its employees to Galveston, Texas before they shipped out to platforms off of the coast of Texas, so the Court presumes that Texas is not entirely

inconvenient. Finally, having a Texas trial should be more convenient for Offshore Oil and Fairways. Offshore Oil's principal office is in Freeport, Texas, which is thirty-four miles from this Court, as the crow flies. Fairways's principal office is located in Houston, Texas, which is forty-eight miles from this Court, as the crow flies. The Western District of Louisiana, Lafayette/Opelousas Division, which is the court to which Fluid Crane requests the case be transferred, has its seat in Lafayette, Louisiana—219 miles from Freeport, Texas and 204 miles from Houston, Texas. Traveling less than 100 miles to a trial should be more convenient for both of the other defendants than traveling over 200. It seems the only party inconvenienced by having the trial in Texas is Fluid Crane, so, by three to one, this factor weighs in favor of the Plaintiff.

2. *The Location of Books and Records.* The location of books and records is generally of little importance in personal injury cases. Fluid Crane contends that relevant medical and corporate records relevant to this accident are located within the Western District of Louisiana. Plaintiff contends that the medical and corporate records should be easily ascertainable through normal discovery procedures, and that, regardless, this factor does not mitigate in favor of transfer because there are defendants, and thus records, in both Louisiana and Texas. Fluid Crane has not given the Court any indication that the records located in Louisiana are so voluminous as to cause Fluid Crane to incur substantial cost in transporting them to this Court. *See LeBouef*, 20 F. Supp. 2d at 1060 ("The Court finds little inconvenience inherent in bringing, if necessary, [the Louisiana] records to Galveston."). Therefore, this factor does not weigh for or against transfer.

3. *The Cost of Obtaining Attendance of Witnesses and Other Trial Expenses.* Parties to litigation face unavoidable costs in almost every case that goes to trial. *Robertson v. M/V Cape Hunter*, 979 F. Supp. 1105, 1108 (S.D. Tex. 1997). Furthermore, it is "rare that the forum in which

the case is litigated is the most convenient for all the parties involved." *Id.* Plaintiff, Fluid Crane, and some of the fact witnesses reside in Louisiana. Consequently, travel expenses to the courthouse in Louisiana would probably be less for both Plaintiff and Fluid Crane than they would be if the case is tried in Galveston. Plaintiff, however, chose to file the case in Galveston, not Louisiana, so the increased travel costs to him must not be of consequence. Furthermore, Offshore Oil and Fairways are both located in Texas, and, as stated above, have principal offices located much closer to Galveston than to the Western District of Louisiana. Therefore, if the case were transferred, the travel costs incurred by the other two defendants would increase. Therefore, this factor weighs neither in favor nor against transfer.

    *4. The Place of the Alleged Wrong.* At the time of Plaintiff's injury, the M/V HAYDEN was operating off the Texas coast on the Outer Continental Shelf. Because this location is off the Texas coast, not the Louisiana coast, this factor weighs against transfer.

    *5. The Possibility of Delay and Prejudice if Transfer Is Granted.* "[T]he possibility of delay or prejudice if the case is transferred will always play a large role in this Court's analysis." *Dupre*, 810 F. Supp. at 828. Any transfer will produce some delay, and as such, Plaintiff must show that a transfer at this stage of the proceedings would cause a significant or unusual delay. *See In Re: Horseshoe Entm't*, 337 F.3d 429, 434 (5th Cir. 2002). This case is set for trial in April 2007. Transfer at this date would not necessarily result in significant delay. As such, this factor does not weigh for or against transfer.

    *6. The Plaintiff's Choice of Forum.* Plaintiff's choice of forum is generally entitled to great deference, but the choice of forum is entitled to less deference when the plaintiff does not live in the

forum. *See, e.g.*, *Robertson v. M/V Cape Hunter*, 979 F. Supp. 1105, 1109 (S.D. Tex. 1997) (finding that a Mississippi plaintiff's choice of the Southern District of Texas was entitled to little or no deference where the case had no connection to the forum). Plaintiff is a resident of Kenner, Louisiana. Fluid Crane claims that Plaintiff's choice of this forum is an example of forum shopping, which this Court strongly discourages. *See Dupre*, 810 F. Supp. at 828 ("[T]his Court is loathe to respect those choices that appear to be blatant attempts at forum shopping with little or no factual justification."). Plaintiff contends that he chose this forum because Galveston has a stronger connection to the case than Louisiana. Although Plaintiff does not reside in this District, his choice still requires some deference unless the case has absolutely no connection to this forum. *See Robertson*, 979 F. Supp. at 1109. Because the case does have a connection to this forum, as discussed above, this factor weighs against transfer.

After carefully considering each factor, the Court concludes that Fluid Crane has failed to carry its burden of demonstrating that the case should be transferred to the Western District of Louisiana. Though it would be more convenient for two key witnesses no longer employed by Fluid Crane (one of whom is incarcerated) to have the trial in Louisiana, the Court finds that the other factors, including Plaintiff's choice of forum, the location of the alleged wrong, and the convenience of the other parties to the litigation, outweigh this factor. Accordingly, Fluid Crane's Motion to Transfer Venue is hereby **DENIED**.

## IV.     Conclusions

For the reasons stated above, Fluid Crane's Motion to Dismiss for Lack of Personal Jurisdiction is respectfully **DENIED**. Fluid Crane's alternative Motion to Transfer Venue is likewise

14

**DENIED**.  Each Party is to bear its own taxable costs, attorneys' fees, and expenses incurred herein to date.

**IT IS SO ORDERED**.

**DONE** this 14th day of September, 2006, at Galveston, Texas.

_____
Samuel B. Kent
United States District Judge